**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

**X.AI LLC, CTC PROPERTY, LLC,**
**and MZX TECH, LLC,**

**Plaintiffs,**

**v.** **No. 2:26-cv-02994-BCL-atc**

**DARANA HYBRID, INC.,**
**CUTTELL MOTORSPORTS, LLC**
**d/b/a INTERNATIONAL HOT ROD**
**ASSOCIATION, and DARRYL CUTTELL,**

**Defendants.**

---

**DARANA HYBRID, INC.,**

**Consolidated Plaintiff,**

**v.** **No. 2:26-cv-03037-BCL-atc**

**CTC PROPERTY, LLC, and**
**MZX TECH, LLC**

**Consolidated Defendants.**

---

**DEFENDANT DARANA HYBRID, INC.'S MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

---

Defendant Darana Hybrid, Inc. ("Darana") respectfully submits this Memorandum of Law in support of its Partial Motion to Dismiss Plaintiffs' Amended Complaint, filed contemporaneously herewith, and states as follows.

## I. PRELIMINARY STATEMENT

Darana filed a Motion to Dismiss Plaintiffs' original Complaint on August 27, 2026. Rather than respond directly to Darana's Motion to Dismiss, on September 17, 2026, Plaintiffs filed their Amended Complaint. Despite Plaintiffs' attempts to remedy defects in their pleading noted by Darana's original Motion to Dismiss, the Amended Complaint still asserts multiple claims for relief which must be dismissed.

Plaintiffs' 246-paragraph, eleven-count Amended Complaint tells one basic story: Plaintiff CTC Property, LLC ("CTC") and Darana entered into a single construction contract, the Master Services Agreement ("MSA"), and Plaintiffs allege Darana breached various provisions of it. Rather than plead that story as a single breach-of-contract claim supported by multiple factual bases, as Rule 8 contemplates and as Plaintiffs themselves did within Count One (combining the markup-cap and phantom-labor theories in one count), Plaintiffs instead split what is, at most, one contract claim into six separate counts (Counts One, Two, Four, Five, Nine and Ten), each keyed to a different MSA section but each seeking to redress the same injury: money Plaintiffs paid Darana, or allegedly overpaid Darana, under the same agreement. That multiplication of counts is duplicative and needlessly complicates the pleadings. Counts Two, Four, Five, Nine and Ten should be dismissed as duplicative of Count One or, in the alternative, should be consolidated into a single breach-of-contract count.

Separately, Count Six and Count Eight repackage the same overbilling and payment-diversion allegations as "conversion" and "fraud". Although the Amended Complaint now identifies the communication on which the July 2 theory rests, it still alleges no contemporaneous facts showing that Darana lacked an intent to perform when the communication was conveyed. Identifying the communicator cures, at most, the "who" component; it does not supply the missing

fraudulent intent. Plaintiffs instead infer intent solely from later alleged nonperformance under the MSA. Finally, Plaintiff MZX Tech LLC ("MZX") is not a party to the MSA and lacks standing to sue for breach of that contract.

Simply put, this is a payment action, a very expensive one, but a payment action nonetheless, and the Court should not allow Plaintiffs to overcomplicate their claims and recharacterize them as anything other than what they are, breach of contract or unjust enrichment claims between CTC and Darana.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Threadbare recitals of a cause of action's elements, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court accepts well-pleaded factual allegations as true, it need not accept legal conclusions couched as factual allegations. *Nwanguma v. Trump*, 903 F.3d 604, 611 (6th Cir. 2018) (citing *Twombly*, 550 U.S. at 555).

### B. Rule 9(b).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In this Circuit, that means, at a minimum, the plaintiff must allege "the time, place, and content of the alleged misrepresentation on which [it] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006); *accord Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999).

Where multiple defendants are named, Rule 9(b) requires the plaintiff to plead fraud with particularity "as to each defendant" individually; lumping defendants together and referring only to "defendants'" misrepresentations, without identifying which defendant said or did what, does not satisfy the Rule. *See Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012). And where the alleged fraud consists of a broken promise of future performance, the complaint must plead specific facts giving rise to a strong inference that the promisor had no intention of performing at the time the promise was made; a subsequent failure to perform, standing alone, does not amount to fraud. *Kim v. Wells Fargo Bank, N.A.*, 2017 WL 11921313, at *6-7 (W.D. Tenn. Feb. 28, 2017); *see also Isaac v. Ctr. For Spine, Jt., and Neuromuscular Rehab., P.C.*, 2011 WL 2176578, at *6 (Tenn. Ct. App. June 1, 2011) ("It is essential to recognize that, in the context of a claim of promissory fraud, the mere fact that the promisor failed to perform the promised act is insufficient by itself to prove fraudulent intent. This is because not every broken promise starts with a lie." (alterations and quotations in original omitted)).

## III. ARGUMENT

### A. COUNT EIGHT (FRAUD) SHOULD BE DISMISSED AS REPACKAGED BREACH OF CONTRACT CLAIMS

Count Eight alleges three theories of fraud, incorporated by reference from paragraph 220 of the Amended Complaint. All three should be dismissed as they are essentially breach of contract claims, and the Amended Complaint does not identify any independent duty to Plaintiffs that Darana allegedly violated. Moreover, sub-allegation (c) does not satisfy Rule 9(b).

#### 1. <u>The Amended Complaint fails to Identify any Independent Duty to Support a Claim of Fraud</u>

CTC and MZX allege three instances of fraud, that:

a. Darana affirmatively misrepresented that work was performed by Darana employees when it was in fact performed by subcontractors.

b. Darana affirmatively misrepresented that work was performed for the benefit of CTC and MZX sites when it was in fact performed for the benefit of other entities.

c. Darana affirmatively misrepresented that a $44.39 million payment made by CTC and MZX on July 2, 2026, would be used to satisfy invoices for materials to particular suppliers when in fact Darana applied the payment to other purposes.

Am. Compl. at ¶ 220. The Amended Compliant added some facts to its fraud claims but absent from those allegations is any assertion of what independent duty Darana had to any party outside of any contractual duty. *See* Am. Compl. at ¶¶ 77-86, 95-96, 122. Instead, the Amended Complaint repeatedly alleges that Darana breached certain provisions of the MSA, using phrases such as "in violation of the MSA", *id.* at ¶ 95, and "Darana breached those requirements [referring to the MSA's markup cap in § 2.4]" *id.* at ¶ 78. It also cites MSA § 4.2.1 as the source of the duty allegedly violated when describing the specific facts underlying the claim made in paragraph 220(c). *See id.* at ¶ 122. "Darana breached MSA Section 7.4, committed fraud, breached a binding agreement about how to direct the funds, and illegally converted the funds CTC paid, while also violating the implied covenant of good faith and fair dealing." *Id.* at ¶ 128.

The allegations describe alleged omissions or contract-compliance failures related to the subcontractor disclosure requirements, markup limitations, scope-of-work restrictions, and invoice coding practices all found in the MSA, not a particularized affirmative misrepresentation without any intent to perform at the time the promise was made as Rule 9(b) requires. *See Am. Cable Corp. v. ACI Mgt., Inc.*, 2000 WL 1291265, at *5 (Tenn. Ct. App. Sept. 14, 2000) (finding that a failure to perform a promise, standing alone, is not competent evidence that the promisor never intended to perform and that the mere fact that the promisor failed to perform the promised act is insufficient by itself to prove fraudulent intent). Because there is no independent duty cited nor allegations of

any fraud other than allegations of breached contractual provisions, these fraud claims should be dismissed as duplicative of the breach of contract claims. *See Mid-S. Milling Co., Inc. v. Loret Farms, Inc.*, 521 S.W.2d 586, 588 (Tenn. 1975) ("A contract may be negligently or fraudulently breached and the cause of action remain in contract rather than in tort."); *see also Thomas & Associates, Inc. v. Metro. Govt. of Nashville*, 2003 WL 21302974, at *6 (Tenn. Ct. App. June 6, 2003) ("Ordinarily, it is not a tort for one of the contracting parties to breach the contract. Conduct constituting breach of contract becomes tortious only when it also violates a duty, independent of the contract, arising from wider principles of social responsibility."); *Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC*, 2020 WL 4366091, at *12 (W.D. Tenn. July 30, 2020) ("Courts should be particularly skeptical of business plaintiffs who—having negotiated an elaborate contract or having signed a form when they wish they had not—claim to have a right in tort whether the tort theory is negligent misrepresentation, strict tort, or negligence." (quotations omitted)); *Commc'ns Unlimited Contracting Servs., Inc. v. Comdata, Inc.*, 611 F. Supp. 3d 483, 496 (M.D. Tenn. 2020) (dismissing plaintiff's fraud claim as duplicative of its breach of contract claim because "[i]t is well settled under Tennessee law that a tort cannot be predicated on a breach of contract. A tort can exist only if a party breaches a duty which he owes to another independently of the contract." (citations omitted)).

2. <u>Sub-allegation (c), the July 2, 2026, payment, similarly fails, and is a mere restatement of Plaintiffs' breach of contract claims.</u>

Paragraph 220(c) alleges that Darana misrepresented that the $44.39 million payment "would be used to satisfy invoices for materials to particular suppliers when in fact Darana applied the payment to other purposes." Am. Compl. ¶ 220(c). The Amended Complaint now identifies a July 2, 2026, exchange and quotes Darana's outside counsel as stating "[t]his is agreeable." *Id.* ¶ 124. But that addition identifies only the communication through which Darana's assent was

conveyed. It does not allege any contemporaneous instruction, decision, communication, or other fact showing that Darana had already decided not to comply when the response was made. Nor does it allege that counsel made any representation beyond communicating the client's assent. The pleading therefore supplies a messenger, but no factual basis for the required inference that the client's promise was false when made. *See Kim*, 2017 WL 11921313, at *6-7; *Isaac*, 2011 WL 2176578, at *6. It also does not distinguish this theory from Plaintiffs' own breach-of-contract and conversion counts arising from the identical conduct. *See* Am. Compl. ¶¶ 199–211 (Counts Five and Six, pleading the same $44.39 million diversion as breach of MSA § 7.4, breach of a separate July 2 agreement, and conversion); *see also Fowler v. Happy Goodman Fam.*, 575 S.W.2d 496, 499 (Tenn. 1978) ("Under the majority view, in order for actionable fraud to be based upon a promise of future conduct, it must be established that such a promise or representation was made with the intent not to perform."). Instead, it only makes a conclusory allegation that Darana had no intent to comply with the conditions for payment, with no specific facts to support that conclusion. *See Garavaglia v. Gogebic Cnty.*, No. 23-1343, 2024 WL 340781, at *1 (6th Cir. Jan. 30, 2024) ("A complaint cannot survive on conclusory allegations or legal conclusions. Nor can a plaintiff advance their claims based on a sheer possibility that a defendant has acted unlawfully." (citations and quotations in original omitted)).

Plaintiffs' theory remains hindsight reasoning: because Darana allegedly handled the funds differently after the payment, Darana must have intended not to perform at the outset. A subsequent failure to honor a payment instruction, without particularized facts showing contemporaneous fraudulent intent, is at most a breach of contract allegation, which Plaintiffs have already pled in Count Five, not an independently pled fraud. *See, e.g.*, Am. Compl. at ¶ 122 (citing MSA § 4.2.1

for the duty at issue); *see also Mid-S. Milling Co., Inc.*, 521 S.W.2d at 588; *Thomas & Associates, Inc.*, 2003 WL 21302974, at *6; *Raymond James & Assocs., Inc*, 2020 WL 4366091, at *12.

For these reasons, Count Eight must be dismissed.

### B. THE CONVERSION CLAIM IS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIMS AND SHOULD BE DISMISSED

Notwithstanding that the allegations in Count Six are baseless, conversion is a tort and Count Six is based on identical allegations as Count Five's breach of contract claim. *See* Am. Compl. at ¶¶ 199-211. Thus, just as with the fraud claims, Plaintiffs have not alleged any independent duty or conduct separate and apart from the breach of contract claim, and that conversion claim should be dismissed as a matter of Tennessee law. *See Mid-S. Milling Co., Inc.*, 521 S.W.2d at 588; *Thomas & Associates, Inc.*, 2003 WL 21302974, at *6; *Raymond James & Assocs., Inc.*, 2020 WL 4366091, at *12; *see also Comdata, Inc.*, 611 F. Supp. 3d at 496 (dismissing plaintiff's conversion claim because the "claim for conversion is basically another re-casting of [plaintiff's] contract claim").

### C. COUNTS ONE, TWO, FOUR, FIVE, NINE AND TEN SHOULD BE CONSOLIDATED INTO A SINGLE BREACH-OF-CONTRACT CLAIM.

Counts One, Two, Four, Five, Nine and Ten are all brought by the same plaintiffs (CTC and MZX), against the same defendants (Darana and Darryl Cuttell ("Cuttell")), arising from the same contract (the MSA, as amended), and seeking overlapping categories of damages tied to the same core injury: amounts Plaintiffs paid, or should be excused from paying, because of Darana's performance under the MSA. A single contract between the same parties gives rise to a single claim for breach of that contract; the number of ways in which a defendant is alleged to have breached does not multiply the number of causes of action. *See Borden v. Antonelli College*, 304 F. Supp. 3d 678, 691 (S.D. Ohio 2018) ("Courts have authority to dismiss duplicative claims[.]").

Counts One, Two, Four, Five, Nine and Ten are, in substance, a single breach-of-contract claim broken into six artificially separate counts:

- Count One (Overbilling) alleges breach of MSA § 2.4 (subcontractor markup cap) and MSA §§ 2 & 4 (phantom labor). Compl. ¶¶ 102–109;
- Count Two (Out-of-Scope Work) alleges breach of the MSA's scope-of-work provisions and § 8.2 (trademark misuse), the same species of "unauthorized billing" claim as Count One, merely tied to a different contractual provision. Compl. ¶¶ 110–115;
- Count Four (Failure to Provide Data) alleges breach of MSA § 9.12 (audit rights), seeking legal expenses incurred because Darana would not substantiate the very overbilling alleged in Counts One and Two. Compl. ¶¶ 126–130;
- Count Five (Misappropriation of Post-Termination Payments) alleges breach of MSA § 7.4 (orderly wind-down), plus an alleged "separate" July 2, 2026, agreement concerning the same $44.39 million payment, plus, in the alternative, breach of the implied covenant of good faith and fair dealing arising from the same MSA. Compl. ¶¶ 131–137;
- Count Nine (Orderly Wind-Down) likewise alleges breach of MSA § 7.4, the identical provision invoked in Count Five, based on different post-termination conduct (permit cancellation, lien filings, and media disclosures). Compl. ¶¶ 161–165; and
- Count Ten (Forum Selection Clause) alleges a breach of MSA § 9.17, seeking legal expenses related to defending the lien enforcement action pending in Mississippi, despite that CTC was not sued in that case.

Counts Five and Nine are particularly duplicative of one another as both are expressly grounded in MSA § 7.4's single "orderly wind-down" obligation, differing only in which post-termination facts each count emphasizes. There is no principled basis for two separate breach-of-contract counts addressed to the same contractual duty. And the purportedly "separate" July 2, 2026, agreement pled within Count Five is, on the Amended Complaint's own allegations, simply Darana's performance (or non-performance) of its pre-existing MSA § 7.4 wind-down obligation to direct payments to critical suppliers, not a freestanding contract independent of the MSA, and thus does not warrant a separate claim either.

Maintaining six separate breach-of-contract counts for a single agreement serves no purpose other than to inflate the Amended Complaint, complicate the pleadings, and risk duplicative or inconsistent damages awards for what is, at bottom, one course of contractual dealing. It also needlessly multiplies the issues the Court and the parties must brief, try, and instruct a jury on, contrary to Rule 1's directive that the Federal Rules "secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1; *see also* Fed. R. Civ. P. 12(f) (authorizing the Court to strike "redundant" matter from a pleading).

Darana therefore respectfully requests that the Court dismiss Counts Two, Four, Five, Nine, and Ten as duplicative of Count One and direct Plaintiffs to replead a single, consolidated breach-of-contract claim against Darana that incorporates each of the factual bases for breach currently scattered across those six counts. In the alternative, to the extent the Court concludes dismissal is premature at the pleading stage, Darana requests that the Court order Counts One, Two, Four, Five, Nine, and Ten consolidated for all further proceedings, including a single verdict form limiting Plaintiffs to one recovery of contract damages regardless of how many contractual provisions are found to have been breached. *See Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 465

(6th Cir. 1999) (holding that Federal Rule of Civil Procedure 49 "is explicitly permissive, which leaves the decision within the sound discretion of the trial court" as to the form of verdict).

### D. MZX LACKS STANDING TO ASSERT BREACH OF THE MSA, AND ANY CLAIMS ASSERTED ON BEHALF OF MZX SHOULD BE DISMISSED FROM COUNTS ONE, TWO, FIVE, NINE AND TEN.

"[T]here is a presumption that a contract is executed solely for the benefit of the parties to it." *Bricks, Inc. v. BNY Tr. Co. of Missouri*, 165 F. Supp. 2d 723, 726 (W.D. Tenn. 2001). Under Tennessee law, only a party to a contract, or an intended third-party beneficiary of that contract, has standing to sue for its breach. *Bridgestone Am.'s, Inc. v. IBM*, 172 F. Supp. 3d 1007, 1023 (M.D. Tenn. 2016) ("contracts are generally presumed to be executed for the benefit of the parties to the contract"); *Owner Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 68 (Tenn. 2001) ("a stranger to a contract has no right to sue for its breach, but an intended third-party beneficiary may enforce a contract provided the benefit flowing from the contract to that party was intended, not merely incidental.").

Counts One, Two, Five, Nine, and Ten are each brought by "CTC and MZX". But the MSA identifies only two contracting parties: CTC, defined as the "Company," and Darana, defined as the "Contractor." *See* Exh. 1 of Am. Compl., at 1-3. MZX is not a signatory to the MSA, is not identified as a party anywhere in the Basic Information Sheet, and is not a party to Amendment One or Amendment Two, both of which were entered between CTC and Darana alone. *See* Exhs. 2 & 3 of Am. Compl.

The Amended Complaint does not allege that MZX is an intended third-party beneficiary of the MSA, nor could it as the MSA states that:[1]

[1] Under Tennessee law, a party seeking to overcome the presumption that a contract was executed solely for the benefit of the signing parties bears the burden of establishing standing as an intended third-party beneficiary. *First Tenn. Bank Nat'l Ass'n v. Thoroughbred Motor Cars*, 932 S.W.2d 928; 930 (Tenn. Ct. App. 1996), citing *Moore Construction Co. v. Clarksville Department of Electricity,* 707 S.W.2d 1, 9 (Tenn. Ct. App. 1985) ("Since the law presumes that a

> The provisions of this Agreement and the rights and obligations created hereunder are intended for the sole benefit of Company and Contractor, and do not create any right, claim or benefit on the part of any person not a party to this Agreement. The parties do not intend any provision of this Agreement to be enforceable by or to benefit any third party.

Exh. 1 to Am. Compl., at § 9.9. Despite this clear statement, CTC and MZX appear to now make two arguments to claim that the MSA covered MZX and covered work in Mississippi: (1) that there was a course of conduct between the parties that showed that the MSA covered work in Mississippi (despite that the MSA never included Mississippi in any of its executed terms), Am. Compl. at ¶¶ 48-56, 112-113; and (2) that MZX is somehow a party to the MSA because one of the definitions states that the capitalized definition "'Party' or 'Parties' means Company, Contractor, and their respective representatives, agents, employees, officers, directors or contractors, or subcontractors[,]" Exh. 1 to Am. Compl., at § 10, and MZX was acting as CTC's agent (despite the fact that the MSA explicitly states there are not beneficiaries besides CTC and Darana), Am. Compl. at ¶¶ 15, 27.

The first argument is easily addressed by both the MSA and the Amended Complaint's own allegations. The MSA explicitly states that "This Agreement may be changed only by a written document signed by authorized representatives of Company and Contractor. **No course of dealing or course of conduct shall operate to modify this Agreement.**" Exh. 1 to Am. Compl. at § 9.6 (emphasis added). The Amended Complaint quotes § 9.6 and specifically alleges that it was agreed that "[n]o course of dealing or course of conduct shall operate to modify this Agreement." *See* Am. Compl. at ¶ 33. Thus, even taking the Amended Complaint's allegations as

---

contract has been executed for the benefit of the parties thereto, a person claiming to be an intended beneficiary has the burden of proving from the terms of the contract itself or the circumstances surrounding the contract's execution that he is entitled to recover.). Here, MZX does not even plead, let alone support, third-party beneficiary status.

true, any course of conduct argument that MZX was treated as a party under the MSA or that the MSA covered Mississippi is plainly foreclosed by the MSA's language.

As for the definitional argument, Plaintiffs misconstrue the list of capitalized definitions in § 10 of the MSA, in this case the capitalized defined terms "Party" or "Parties", as a statement of who the actual parties to the MSA are and what projects its included. But that is not what § 10 of the MSA does, it merely defines some capitalized terms. Who are parties to the MSA and what is covers are found on the Basic Information Sheet. Exh. 1 to Compl. at pg. 1-3. The specific provisions that CTC and MZX claim are breached do not at any point used the capitalized "Party" or "Parties". *See* Exh. 1 to Compl. at pg. 1-3 & ¶ 10. For example, Count One asserts claims of overbilling under § 2.4 of the MSA, but nowhere in § 2.4 are the words "Party" or "Parties". *See, e.g.*, Exh. 1 to Compl. at § 2.4.

Other parts of the MSA use capitalized words, such as "Law", *see id.* at § 9.10, "Project", *see id.* at § 8.3, "Additional Insured", *see id.* at § 6.2.1, or "Owner", *see id.* at § 2.2. Most importantly, the MSA actually uses a capitalized "Party" at times, but not in any of the sections CTC and MZX claim are breached. *See, e.g.*, at § 5.1. Thus, even if CTC is correct that MZX was an agent under the term, which it is not, such a definition only applies to § 5.1 of the MSA, which is the only place that capitalized "Party" appears. *See generally id.* The MSA would not use a capitalized "Party" in one place and then lowercase "party" or "parties" everywhere else in the MSA if the two did not and could not have different meanings.

Additionally, even if Plaintiffs' definitional argument is right, the two signed amendments to the MSA redefine "Party" as only Darana and CTC. *See* Exhs. 2 & 3 to Compl. The Amendments also state that "[i]n the event of a conflict among the terms and conditions of the Agreement and this Amendment, the terms and conditions of this Amendment shall govern to the

extent needed to resolve the conflict." *See* Exh. 2 to Am. Compl. at § 9; Exh. 3 to Am. Compl. at § 3. Also, even if the Proposed Amendment Three applies, which it does not, MZX would still not be considered a party to the MSA, as the same language exists. *See* Exh. 3 to Am. Compl. at ¶ 1 & § 4.

Plaintiffs rely upon the Proposed Amendment Three, but that unsigned document has no legal effect and any allegation or paragraph related to it should dismissed/stricken. *See Benefit Consulting All., LLC v. AIG Life Ins. Co.*, 2008 WL 11510630, at *7 (M.D. Tenn. Sept. 26, 2008) (holding that an unsigned amendment has no legal effect). The Amended Complaint admits that the proposed amendment was not executed. *See* Am. Compl. at ¶ 72. The MSA explicitly states that "[t]his Agreement may be changed only by a written document **signed by authorized representatives of Company and Contractor. No course of dealing or course of conduct shall operate to modify this Agreement.**" Exh. 1 to Compl. at § 9.6 (emphasis added). The Amended Complaint cites this provision and admits that the MSA can only be "changed 'by written document signed by authorized representatives of **[CTC]** and **[Darana]**.'" *See* Am. Compl. at ¶ 33 (alterations in original) (emphasis added) (quoting MSA at § 9.6). Thus, taking the Amended Complaint as true, the MSA can only be changed by the signatures of CTC and Darana and that did not happen. *See* Am. Compl. at ¶ 33, 72. While creative, Plaintiffs' arguments simply cannot change the fact MZX was not a party to the MSA, even if it was acting as CTC's agent, such that it does not have standing to sue under the MSA.

Under Tennessee law, "a parent corporation and a subsidiary are in law separate and distinct entities, and under ordinary circumstances a contract in terms and in name with one corporation cannot be treated as that of both, and a parent corporation will not be liable for the obligations of its subsidiaries." *Tennessee Valley Auth. v. Exxon Nuclear Co.*, 753 F.2d 493, 497

(6th Cir. 1985). In *Tennessee Valley Authority*, Exxon attempted to invoke the payment increase terms of its subsidiary, Exxon Nuclear Company, under a contract with the Tennessee Valley Authority. *See id.* The Sixth Circuit rejected that argument, holding that the plain meaning of the contract at issue only bound the TVA and Exxon Nuclear, and that to require the TVA to then compensate Exxon under the contract would be to "add an implied contract term that is inconsistent with an express contract" which courts cannot do. *Id.* Of particular note from that case is the following:

> At no time has it been intimated that Exxon Nuclear is a mere instrumentality of Exxon, or that it is anything other than a separate and viable corporate entity. By its own admission, Exxon never contracted to be bound by the contract between TVA and Exxon Nuclear. If TVA attempted to enforce the contract provisions against Exxon, this Court would not have the authority to pierce the corporate veil and hold Exxon liable on the contract. By the same token, Exxon cannot benefit by the provisions of a contract of its subsidiary.

*Id.* at 498. As the District Court in that case put it, which was quoted positively by the Sixth Circuit, "Exxon Corporation and ENC chose particular corporate forms of carrying on their business to gain income tax and other regulatory advantages. They must now abide by their choice." *Id.* Here too, it does not matter why MZX and CTC are separate and distinct entities or why MZX and CTC chose to build the Mississippi projects under a separate entity without any written contract, as the Amended Complaint clearly alleges, they are and they did. Just as Exxon did, CTC and MZX must now live with that choice.

Third, the Amended Complaint does not allege the necessary specific facts in order to assert a separate and distinct corporation was an agent of CTC. Tennessee law uses a "unified" test for agency or alter ego and under both theories the question is "whether the parent corporation 'so dominated the subsidiary corporation as to negate its separate personality." *Hatfield v. Allenbrooke Nursing & Rehab. Ctr., LLC*, 2018 WL 3740565, at *35 (Tenn. Ct. App. Aug. 6, 2018) (quotations

omitted). The Tennessee Supreme Court has held that "that an alter ego or agency relationship is typified by the parent corporation's control of the subsidiary corporation's internal affairs or daily operations." *Id.* (quotations omitted). Thus, Tennessee "courts have declined to disregard the presumption of corporate separateness in the absence of evidence of the parent corporation's domination of the day-to-day business decisions of the subsidiary corporation." *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 652 (Tenn. 2009). There is nothing in the Amended Complaint that alleges that CTC dominated the day-to-day business of MZX, and the Amended Complaint only makes conclusory allegations that MZX is an "agent". The Amended Complaint only uses phrases like "supervised", "direction", and "subject to its control". *See* Am. Compl. at ¶ 27, 51. While these phrases allege some direction and authority, they do not state specific facts sufficient to allege domination of day-to-day business decisions that are required for a subsidiary to be considered an agent under Tennessee law. Simply put, Tennessee disfavors disregarding corporate formalities and adding parties to a contract that were not parties to it, and the Amended Complaint has not alleged any specific facts to overcome that presumption.

Reading the MSA as a whole, especially in consideration of § 9.9, MZX is not a party to the MSA with standing to sue under any of the breaches alleged by the Amended Complaint. Because the Amended Complaint does not plausibly allege that MZX is a party to, or an intended beneficiary of, any of the contractual provisions it invokes, MZX's breach of contract claims asserted in Counts One, Two, Five, Nine, and Ten, or in the single consolidated breach-of-contract count as request above, should be dismissed. *See Owner-Operator Indep. Drivers Ass'n, Inc.*, 59 S.W.3d at 68 ("Indeed, traditional privity rules provided that those who were not parties to a contract had no right to sue for its breach.").

To the extent that Plaintiffs argue the MSA covers work done in Mississippi, they have not pointed to any terms or language in the MSA or the two executed amendments stating such. *See generally* Am. Compl. The MSA lists the "Project where Services will be Performed" in the Basic Information Sheet on the first page of the MSA. *See* Ex. 1 to Am. Compl. at 2. The MSA only lists "Project Colossus" in Memphis. *See id.* Amendment One adds "Project Tulane" to the Basic Information Sheet, also in Memphis. *See* Ex. 2 at § 1. Notably, "Project Stateline" and "Project Duke Power Plant", the two Mississippi projects Plaintiffs contend are covered by the MSA, appear for the first time in Proposed Amendment Three, which, as already addressed, was never executed and has no legal effect. But it is still insightful here, because if the two Mississippi projects were already covered by the MSA and its amendments as Plaintiffs contend, why would there need to be a third amendment to the MSA adding them? It is because the MSA did not include the two Mississippi projects that the Proposed Amendment Three was drafted. But it was never signed, and that is the only way it can have any legal effect and add the Mississippi projects to the MSA under § 9.6.

Even taking the allegations of the Amended Complaint as true, there is no legal basis or claim that can be stated by MZX under the MSA, and there is no legal basis for CTC to argue the MSA covered the Mississippi projects. Any claims or allegations asserting such should be dismissed. Moreover, for the reasons listed above, in addition to dismissing MZX's claims under the MSA for lack of standing, Count Eleven should be dismissed to the extent it seeks a declaratory judgment that the MSA governs any work Darana performed in Mississippi.

### E. THE FORUM SELECTION CLAUSE CLAIM IS UNENFORCEABLE

The forum selection clause in the MSA clearly only relates to Darana and CTC, and Darana did not sue CTC in Mississippi, it sued MZX, who is not a party to the MSA. *See* Mississippi

Complaint, attached hereto as Exhibit A.[2] It is notable that the MSA at § 9.17 uses the lowercase word "parties", not the capitalized defined term, "Parties". *See* Exh. 1 to Am. Compl. at § 9.17. Second, while Plaintiffs claim the suit was brought in Mississippi "without basis", Am. Compl. at ¶ 240, the reality is that suit was brough there because neither this Court, nor any other Tennessee Court, has jurisdiction to resolve the lien claims against real property located in Mississippi which Darana brought in that lawsuit, making the clause unenforceable, *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 38 F.4th 501, 509 (6th Cir. 2022) ("Again, there is no specific property within the jurisdiction of the district court at issue here, so, just as there is no in rem jurisdiction, there is likewise no quasi in rem jurisdiction."). Mississippi lien actions are in rem actions, *see Crawler Parts, Inc. v. Laclede Land & Livestock Co.*, 374 So. 2d 798, 800 (Miss. 1979), and thus, "can only be brought in the state where property is located." *Stapp v. Graham*, 2006 WL 8442629, at *2 (E.D. Tenn. Aug. 29, 2006); *see also Still v. Rossville Crushed Stone Co.*, 370 F.2d 324, 325-26 (6th Cir. 1966). That forum selection clause cannot create jurisdiction where it otherwise does not exist. *See Fox v. Eaton Corp.*, 615 F.2d 716, 719 n.5 (6th Cir. 1980) ("It is well established that two parties cannot create jurisdiction by stipulation.").

There are three factors to assess the enforceability of a forum selection clause: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). Here, the second and third factors favor not enforcing the forum selection clause, even if it did apply to claims against

---

[2] The Court may consider this complaint because it is directly referenced by Count Ten of the Amended Complaint. *See Overall v. Ascension*, 23 F. Supp. 3d 816, 824 (E.D. Mich. 2014) (holding at the Rule 12 stage that "the Court may consider documents that are central to, referenced in, or relied upon in the complaint.").

MZX, a non-party. This Court cannot adjudicate the lien enforcement claims that are the centerpiece of the Mississippi litigation. Those claims can only be adjudicated in Mississippi, meaning that Tennessee would ineffectively handle the lawsuit and requiring Darana to bring lien claims in Tennessee that would immediately get dismissed would be unjust. *See, e.g.*, *Tokio Marine & Fire Ins. Co. v. M/V TURQUOISE*, 2001 WL 939826, at *3 (D.S.C. Apr. 24, 2001) (invalidating a forum selection clause that required the plaintiff to bring an in rem action in a forum where the suit could not be maintained). This claim should be dismissed.

## IV. CONCLUSION

This is a payment action, a very expensive one, but a payment action nonetheless, and the Court should not allow Plaintiffs to overcomplicate their claims and recharacterize them as anything other than what they are, breach of contract or unjust enrichment claims between CTC and Darana. For the foregoing reasons, Darana respectfully requests that the Court dismiss the following claims in their entirety: (1) Count Eight for Fraud because the Amended Complaint does not identify an independent duty to Plaintiffs and is duplicative of the breach of contract claim under Rules 9(b) and 12(b)(6); (2) Count Ten for breach of the forum selection clause because the Mississippi lien claims could not be adjudicated in Tennessee; (3) Count Six for conversion as duplicative of the breach of contract claims; (4) Counts Two, Four, Five, Nine and Ten for breach of contract as duplicative of Count One, or in the alternative, order those counts consolidated with Count One for all further proceedings, and (5) MZX Tech LLC's claims for breach of contract asserted in Counts One, Two, Five, Nine and Ten for lack of standing. Defendant Darana seeks partial dismissal of Count Eleven for Declaratory Judgment to the extent it seeks a declaration that the MSA covered work in Mississippi, because it clearly did not.

Respectfully submitted,

**GLANKLER BROWN, PLLC**

By: /s/ *Jeremy G. Alpert*

Jeremy G. Alpert (TN #19277)
Ross E. Webster (TN #24784)
S.T. Rayburn (TN #041634)
6000 Poplar Avenue, Ste. 400
Memphis, Tennessee 38119
(901) 525-1322
jalpert@glankler.com
rwebster@glankler.com
srayburn@glankler.com

and

Marc A. Sanchez (admitted *pro hac vice*)
Andrew M. Hanna (admitted *pro hac vice*)
FRANTZ WARD LLP
200 Public Square, Ste. 3000
Cleveland, OH 44114
(216) 515-1660
msanchez@frantzward.com
ahanna@frantzward.com

*Attorneys for Defendants*
*Darana Hybrid, Inc.,*
*Cuttell Motorsports, LLC d/b/a*
*International Hot Rod Association*
*and Darryl Cuttell*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon the following counsel of record, via email and/or the Court's electronic filing system to all counsel of record, this 1st day of October, 2026.

/s/ *Jeremy G. Alpert*