**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| X.AI LLC, CTC PROPERTY LLC, and MZX TECH LLC,<br><br>Plaintiffs,<br><br>v.<br><br>DARANA HYBRID, INC., CUTTELL MOTORSPORTS, LLC d/b/a INTERNATIONAL HOT ROD ASSOCIATION, and DARRYL CUTTELL,<br><br>Defendants. | Civil Action No. 2:26-cv-02994-BCL-atc<br>Judge Brian C. Lea |
| DARANA HYBRID, INC.,<br><br>Counter-Plaintiff,<br><br>v.<br><br>CTC PROPERTY LLC and MZX TECH LLC,<br><br>Counter-Defendants. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

BACKGROUND .......... 1

A. The Parties Agreed in the MSA To Protect Confidential Information and Cooperate in Entering a Protective Order .......... 1

B. The MSA Required Darana To Return to Plaintiffs All Confidential Information, But Darana Refused .......... 2

C. At Darana's Suggestion, Plaintiffs Drafted the Proposed Protective Order .......... 3

D. Darana Never Provided Comments on the Proposed Protective Order and Now Claims No Protective Order Is Needed .......... 4

LEGAL STANDARD .......... 5

ARGUMENT .......... 66

I. THE PARTIES WILL EXCHANGE CONFIDENTIAL INFORMATION DURING DISCOVERY, AND PROTECTING SUCH INFORMATION FROM PUBLIC DISCLOSURE ESTABLISHES GOOD CAUSE .......... 66

II. THE COURT SHOULD ENTER THE ORDER'S PROVISIONS CONCERNING ATTORNEYS' EYES ONLY DESIGNATIONS TO PROTECT COMPETITIVELY SENSITIVE BUSINESS INFORMATION .......... 8

A. The Court Has Authority To Enter the Protective Order's Provisions Concerning Plaintiffs' Confidential Information That Darana Retained .......... 8

B. There Is Good Cause for the Protective Order's Provisions Restricting Access to Certain Highly Confidential Information to Darana's Attorneys .......... 1010

CONCLUSION .......... 11

CERTIFICATE OF SERVICE .......... 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Baxter Travenol Labs., Inc. v. LeMay*, 93 F.R.D. 379 (S.D. Ohio 1981) ....................................... 9

*Guitar Apprentice, Inc. v. Ubisoft, Inc.*, 2014 WL 12769613 (W.D. Tenn. 2014)..................... 5, 9

*Kasko v. Aetna Life Ins. Co.*, 33 F. Supp. 3d 782 (E.D. Ky. 2014) ................................................ 6

*Knight Cap. Partners Corp. v. Henkel AG & Co., KGaA*,
290 F. Supp. 3d 681 (E.D. Mich. 2017)................................................................................. 6

*Mulligan v. Provident Life & Acc. Ins. Co.*, 271 F.R.D. 584 (E.D. Tenn. 2011) ........................... 9

*R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262 (6th Cir. 2010) ................................. 5, 9

*Steede v. Gen. Motors, LLC*, 2012 WL 2089761 (W.D. Tenn. 2012) ........................................... 6

*Waite, Schneider, Bayless & Chesley Co. v. Davis*,
2012 WL 3600106 (S.D. Ohio 2012)........................................................................ 8, 9, 11

**RULES**

Federal Rules of Civil Procedure:

Rule 26(c)................................................................................................................. 5, 9

Rule 26(f)..................................................................................................................... 4

## INTRODUCTION

The Court should enter the proposed Protective Order attached as Exhibit 1.[1] That Protective Order safeguards the exchange of confidential information in discovery while barring the parties from using such information for non-litigation purposes. Protective orders like this are routine in complex commercial litigation, and the Court should adopt one here.

Typically, these sorts of motions are unopposed – and, at first, this one was. Several months ago, Plaintiffs expressed concern to Darana that it had retained Plaintiffs' confidential information – highly sensitive secrets about the construction of supercomputing facilities – in violation of its contractual duty to "return[ ]" all such information promptly. MSA § 8.1.2. Darana responded that the parties should agree on a protective order to resolve those concerns. So Plaintiffs drafted a proposed order and spent weeks trying to secure Darana's position on it. But last week, Darana reversed course and asserted, without a word of explanation, that no protective order is necessary after all. Its current position appears to be that the parties should litigate this case – a nearly $1 billion dispute about cutting-edge supercomputers that power generative AI models – with no protective order at all. Darana was right the first time. This case epitomizes why courts usually enter protective orders to preserve confidentiality in discovery.

## BACKGROUND

### A. The Parties Agreed in the MSA To Protect Confidential Information and Cooperate in Entering a Protective Order

This case turns on allegations that Darana serially breached the parties' Master Services Agreement ("MSA") and defrauded Plaintiffs. Dkt. 39 ("Am. Compl."). The MSA governed all aspects of Darana's construction of Plaintiffs' artificial-intelligence supercomputing facilities in

---

[1] Exhibits refer to the documents attached to the concurrently filed Declaration of Matthew M. Duffy. The parties' Master Services Agreement ("MSA"), which underpins both the claims and the counterclaims here, is Exhibit 1 to the Amended Complaint. Dkt. 39-1.

the greater Memphis area. Darana denies overbilling Plaintiffs and has counterclaimed for unpaid amounts. *See* Verified Compl. ¶¶ 11, 14 & Prayer for Relief ¶ 3, at 3-4, 8, *Darana Hybrid, Inc. v. CTC Prop. LLC,* No. 2:26-cv-03037 (W.D. Tenn. Aug. 11, 2026), Dkt. 1-1.[2]

Darana's work on Plaintiffs' supercomputing facilities involved highly sensitive business information. The MSA contemplated as much, providing that "[a]s part of [Darana's] engagement and performance . . . it shall have access and contribute to information and materials *of a highly sensitive nature* (including Confidential Information)." MSA § 8.1.1, Dkt. 39-1 (emphasis added). To safeguard that information, Darana "agree[d] that it . . . shall not . . . disclose, make commercial or other use of, or give or sell to any person any Confidential Information received directly or indirectly from [Plaintiff CTC] or any affiliate of [CTC] or acquired or developed in the course of this Agreement." *Id.* At the same time, those protections contained an exception allowing Darana to use confidential information when "required to do so pursuant to law." *Id.* Discovery obligations under the Federal Rules of Civil Procedure are a good example. But even then, use is allowed "only after [Darana] . . . has provided [CTC] cooperation in any attempt [CTC] may make to gain a protective order acceptable to [CTC]." *Id.*

### B. The MSA Required Darana To Return to Plaintiffs All Confidential Information, But Darana Refused

Under the MSA, "[a]ll Confidential Information, regardless of form, shall be the property of [Plaintiff CTC] or the applicable affiliate of [CTC], and *shall be returned* to [CTC] or the applicable affiliate at . . . termination of this Agreement." *Id.* § 8.1.2 (emphasis added). Darana may only retain a copy of the information if it obtains Plaintiffs' permission. *See id.*

[2] Darana's case was subsequently removed and consolidated with this action. *See* Notice of Removal, No. 2:26-cv-03037, Dkt. 1; Order Granting Mot. To Consolidate, Dkt. 36.

Plaintiffs have not granted that permission here. Plaintiffs terminated the MSA on June 23, 2026. *See* Answer ¶ 12, Dkt. 23, *Darana Hybrid, Inc. v. CTC Property LLC*, No. 2:26-cv-03037-BCL-atc. On July 13, 2026, Plaintiffs asked Darana to return and delete all Confidential Information. *See* Duffy Decl. ¶ 6. The parties then discussed the issue before they filed their respective lawsuits. *Id.* ¶ 7. Darana's counsel explained that it had highly sensitive, electronically stored Confidential Information in its possession. *See id.* Darana noted that access to this information would be needed for Plaintiffs' and their contractors' ongoing project work. *See id.*

Darana never disputed its obligation to return Plaintiffs' information and conveyed that it did not anticipate any problems complying with its obligations concerning Confidential Information. *See id.* In essence, Darana justified its refusal to immediately return that information by arguing that it was trying to ensure a smooth transition of the project. *See id.* On August 11, 2026, after Plaintiffs confirmed that terminating Darana's access would not disrupt the project, Plaintiffs again demanded that Darana return all Confidential Information and terminate its access to Plaintiffs' electronically stored information. *See id.* ¶ 8. Darana never did so despite repeated requests. *See id.*

### C. At Darana's Suggestion, Plaintiffs Drafted the Proposed Protective Order

In response to Plaintiffs' follow-up demands, Darana's counsel responded on August 18, 2026. Van Horn Decl. ¶ 4. By then, the parties had filed their complaints, so Darana pivoted to a new position. Now, it asserted it could not terminate access to or otherwise return Plaintiffs' Confidential Information because of discovery obligations and needs. *See* Van Horn Decl. ¶ 4. Specifically, Darana's counsel raised concerns about spoliation and the need to retain Confidential Information to effectively litigate Darana's case. *See id.* To address these

concerns, Darana's counsel suggested entry of a protective order governing confidentiality issues and expressed optimism that the issue could be resolved. *See id.* ¶ 5.

Plaintiffs drafted a protective order substantively identical to Exhibit 1 and sent it to counsel for Darana on August 30, 2026. *See* Van Horn Decl. ¶ 7.[3] The proposal contains standard provisions including: (i) rules for designating material as confidential; (ii) limits on disclosure of confidential material; (iii) procedures for challenging confidentiality assertions; (iv) requirements and procedures for filing confidential materials under seal; and (v) requirements to return and destroy confidential materials after litigation.

It also includes provisions concerning the confidential information Darana refused to return, which are intended to accommodate Darana's discovery concerns. Specifically, the order establishes that material Darana mentioned in this context will be designated Attorneys' Eyes Only and thus inaccessible to business personnel at Darana. *See* Ex. 1 ¶¶ 1, 4-5. The order further requires prompt return and destruction of this information after litigation concludes. *See* Ex. 1 ¶¶ 1, 4-6, 11-12. And it allows the parties to designate other material Attorneys' Eyes Only in appropriate circumstances to the extent discovery raises similar confidentiality concerns.

### D. Darana Never Provided Comments on the Proposed Protective Order and Now Claims No Protective Order Is Needed

Despite asking Plaintiffs to draft a proposed agreement, Van Horn Decl. ¶ 6, Darana never provided edits, comments, or a counterproposal. Plaintiffs raised the issue again during the parties' Rule 26(f) conference on September 16, 2026. Darana's counsel subsequently stated on September 22 that "[w]e are preparing comments to the proposed protective order." Ex. 2 at

[3] It appears that Darana's counsel might not have received the proposed Protective Order on August 30. Van Horn Decl. ¶ 7. Regardless, Plaintiffs' counsel resent the draft, and Darana's counsel confirmed receipt on September 16, before the Rule 26(f) conference. *See id.* ¶¶ 7-8.

3. After several follow-up requests, Darana's counsel reiterated on September 29 that "[w]e are looking at the Protective Order now and will send comments." *Id.* at 1.

Darana never sent the promised comments. Instead, on the morning of September 30, 2026 – the day the parties were to submit their joint proposed scheduling order and agreed protective order – Darana's counsel stated: "Our client does not agree on the protective order and does not think one is necessary here." Ex. 2 at 1; Van Horn Decl. ¶ 9. Darana provided no explanation for its new claim that no protective order was needed and did not respond to Plaintiffs' follow-up request for clarification. This motion follows.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(c)(1), the "court may, for good cause, issue an order to protect a party or person from . . . undue burden," including by "specifying terms . . . for the disclosure or discovery." Rule 26(c)(1)(G) specifically authorizes orders "requiring that a trade secret or other confidential . . . commercial information not be revealed or be revealed only in a specified way." If discovery includes trade secrets or confidential commercial information, "the appropriate safeguards that should attend their disclosure by means of a protective order are [] a matter within the trial court's discretion." *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 269 (6th Cir. 2010) (affirming protective order limiting access to competitively sensitive information to outside "experts and counsel").[4] The Court has "broad discretion" to enter a protective order, including one allowing for Attorneys' Eyes Only designations. *Guitar Apprentice, Inc. v. Ubisoft, Inc.*, 2014 WL 12769613, at *1 (W.D. Tenn. 2014).

[4] Unless otherwise noted, all internal citations and quotations are omitted from case cites.

## ARGUMENT

### I. THE PARTIES WILL EXCHANGE CONFIDENTIAL INFORMATION DURING DISCOVERY, AND PROTECTING SUCH INFORMATION FROM PUBLIC DISCLOSURE ESTABLISHES GOOD CAUSE

Good cause exists to enter the proposed Protective Order's standard provisions governing confidential documents exchanged in discovery. Among other things, those provisions allow parties to designate documents and depositions confidential, Ex. 1 ¶¶ 1-2; restrict access to such confidential information, *id.* ¶¶ 3, 6; require the filing of such information under seal in the first instance to avoid public disclosure, *id.* ¶ 7; and establish a process for challenging designations, *id.* ¶ 9. Courts routinely enter such protective orders. *See Steede v. Gen. Motors, LLC*, 2012 WL 2089761, at *3 (W.D. Tenn. 2012) ("Courts routinely enter umbrella protective orders without an individualized and document-specific showing of confidentiality or how disclosure would create harm").[5] Multiple considerations support one here.

*First*, discovery in this case will include competitively sensitive information. This case concerns the construction of supercomputing facilities supporting AI technology. Discovery will focus on the costs of labor and materials, the rates charged by subcontractors and suppliers, the terms of subcontracts, and the hours and effort expended to complete these facilities. *E.g.*, Am. Compl. ¶¶ 1-12. Discovery will also include non-public discussions between the parties and internal discussions by each party. Plaintiffs compete with rival companies building their own supercomputing facilities, and Darana competes with other contractors for the construction work. Disclosure of the parties' pricing, sourcing, subcontracting, and other non-public commercial communications to competitors would threaten serious competitive harm.

[5] S*ee also Knight Cap. Partners Corp. v. Henkel AG & Co., K*GaA, 290 F. Supp. 3d 681, 685-86 (E.D. Mich. 2017) (granting protective order to safeguard confidentiality, over opposing party's objection, because confidential information and trade secrets were likely to be produced*);* *Kasko v. Aetna Life Ins.* Co., 33 F. Supp. 3d 782, 790 (E.D. Ky. 2014) (similar).

*Second*, the parties' own contract confirms that the project would involve "information and materials of a highly sensitive nature," and Darana agreed not to "disclose, make commercial or other use of, or give or sell to any person" such information. MSA § 8.1.1. The MSA broadly defines Confidential Information to include, among other things, "cost, rate and pricing structures," "financial information," and "information regarding the Project, including the work to be performed and the scope of the Project." *Id.* § 10. The parties further agreed that a breach of these confidentiality obligations "will give rise to irreparable injury" for which damages "may not be adequate compensation." *Id.* § 8.1.4. And the parties specifically agreed that, if Confidential Information must be used "pursuant to law," like in discovery, it should be subject to "a protective order." *Id.* § 8.1.1. The parties' contractual recognition of the sensitivity of this information reinforces the conclusion that good cause exists for the proposed order.

*Third*, Darana itself insisted that documents and data in its possession are confidential. During the course of investigating the extent and amount of Darana's overcharging on the project, Plaintiffs invoked their rights to examine Darana's records under MSA § 9.12. Am. Compl. ¶ 87. On May 11, 2026 (months before litigation began), Darana rejected that demand on grounds that its "ability to disclose certain vendor pricing, subcontractor relationships, and related proprietary information remains limited due to the confidentiality obligations governing those relationships." Ex. 3 at 2. Darana also stressed "the competitive and confidential nature of the Services being performed" and declared that disclosure of this information "could compromise protected business relationships, expose proprietary commercial information, subject Darana . . . to liability exposure, and materially impact ongoing project operations." Ex. 3 at 1-2. That assertion – which itself breached the MSA's audit provisions and underpins one of

Plaintiffs' claims, *see* Am. Compl. ¶¶ 87, 108-110 – cannot be squared with Darana's current position that no protective order is needed.

Moreover, as Darana recognized, third parties such as subcontractors and materials suppliers possess relevant information in this case, and they have a confidentiality interest in their documents. Plaintiffs anticipate serving subpoenas on many of these third parties. Entering the Protective Order will protect the interests of those third parties, *see* Ex. 1 ¶ 14 (allowing non-parties to obtain protections under the order), who are likely to insist on confidentiality protections for the reasons Darana itself articulated, *see* Ex. 3 at 1-2.

*Fourth*, the proposed Protective Order is particularly important here because Defendants have shown an intent to litigate this dispute in the press. Immediately after filing its lawsuit against Plaintiffs, Darana's sole owner, Defendant Darryl Cuttell, gave multiple interviews to media outlets about the dispute, including to Action News 5 (NBC's Memphis affiliate) and the Daily Memphian. Am. Compl. ¶ 139. A protective order is necessary to ensure that Defendants cannot use confidential information obtained in discovery as part of a press campaign.[6]

## II. THE COURT SHOULD ENTER THE ORDER'S PROVISIONS CONCERNING ATTORNEYS' EYES ONLY DESIGNATIONS TO PROTECT COMPETITIVELY SENSITIVE BUSINESS INFORMATION

### A. The Court Has Authority To Enter the Protective Order's Provisions Concerning Plaintiffs' Confidential Information That Darana Retained

In addition to standard provisions concerning confidential information, the Protective Order also restricts access to certain materials to outside counsel. *See* Ex. 1 ¶¶ 4-5, 12. The

[6] Courts recognize a "distinction between limiting disclosure of discovery materials," as the proposed Protective Order does, and "limiting access when a document is filed or used in connection with a public proceeding." *Waite, Schneider, Bayless & Chesley Co. v. Davis*, 2012 WL 3600106, at *4 (S.D. Ohio 2012). The issue now is simply whether discovery materials should be protected. Motions to seal can be resolved if and when confidential information is filed with the Court.

proposed Attorneys' Eyes Only provisions concern Plaintiffs' electronically stored confidential information that Darana can access.

Good cause exists for the Protective Order's restrictions on Darana's access to this information. *See Guitar Apprentice*, 2014 WL 12769613, at *1, *5 (finding good cause for entry of a protective order allowing for confidentiality and Attorneys' Eyes Only designations to preserve the "confidentiality of the parties' sensitive information").[7] After Plaintiffs terminated the MSA, Darana was required to return all Confidential Information it obtained during its work on the project. *See* MSA § 8.1.2. Darana could retain copies only with Plaintiffs' written consent, which Plaintiffs did not provide. *See id.*; Duffy Decl. ¶ 6. Following termination, Plaintiffs requested that Darana comply with these obligations. *See* Duffy Decl. ¶¶ 6-8. Darana has never denied that the MSA requires it to do as requested.

Yet Darana refused to comply with the contract by invoking the discovery process in this case. *See* Van Horn Decl. ¶ 4. The information thus falls within the Court's authority under Rule 26(c) to specify the "appropriate safeguards" that should govern confidential information in a party's possession. *Olmstead*, 606 F.3d at 269; *see also Mulligan v. Provident Life & Acc. Ins. Co.*, 271 F.R.D. 584, 594 (E.D. Tenn. 2011) (extending protective order protections to documents already produced and in an opposing party's possession); *Baxter Travenol Labs., Inc. v. LeMay*, 93 F.R.D. 379, 382-83 (S.D. Ohio 1981) (retroactively applying Attorneys' Eyes Only confidentiality protections to blueprints a party obtained outside of the formal discovery process). Indeed, Darana itself suggested that a protective order was the right way to resolve its

[7] *See also Waite*, 2012 WL 3600106, at *5 ("[c]ourts frequently allow [Attorneys' Eyes Only] designation when especially sensitive information is at issue").

discovery-related concerns regarding Plaintiffs' Confidential Information. *See* Van Horn Decl. ¶ 6. It never gave a reason for backtracking on the day the parties' Rule 26 report was due.

**B. There Is Good Cause for the Protective Order's Provisions Restricting Access to Certain Highly Confidential Information to Darana's Attorneys**

For multiple reasons, access to the electronically stored Confidential Information that Darana has retained should be restricted to Darana's counsel.

*First*, the information is highly sensitive. Indeed, it is among the most sensitive information about the project. All of it is Confidential Information protected by the MSA. MSA §§ 8, 10 (definitions). And all of the information belongs to Plaintiffs. *See id.* § 8.1.2 ("All Confidential Information, regardless of form, shall be the property of" Plaintiffs). The information is so important that Darana agreed that disclosing it would "give rise to irreparable injury." *Id.* § 8.1.4.

*Second*, the information is sensitive because it is competitively valuable and could be used to harm Plaintiffs if Darana's business personnel continue to have access to it. Plaintiffs compete with other AI companies to build supercomputing facilities quickly and efficiently. Plaintiffs' Confidential Information could easily be used to give competitors a shortcut in building their own facilities. Likewise, disclosure of the information risks allowing competitors to replicate Plaintiffs' efforts without the time and expense Plaintiffs invested. If Darana were equipped with Plaintiffs' highly confidential information, Plaintiffs' competitors could hire Darana in an attempt to obtain Plaintiffs' information and thus a competitive advantage. This is why the MSA contains safeguards requiring Darana to return all Confidential Information after termination. *See* MSA § 8.1.2. By allowing only outside counsel to access the Confidential Information Darana has retained due to purported discovery needs, the Protective Order ensures that Darana cannot use this litigation to circumvent the parties' agreement.

*Third*, Darana agreed that if it was "required" to use Confidential Information "pursuant to law," it would "cooperat[e] in any attempt [Plaintiffs] may make to gain a protective order acceptable to" Plaintiffs. MSA § 8.1.1. If there were any validity to Darana's contention that spoliation concerns prevent it from terminating access to Plaintiffs' Confidential Information, this provision tells it what to do: cooperate with Plaintiffs in seeking an appropriate protective order. In fact, as detailed above, Darana itself suggested that a Protective Order was the best way to address Plaintiffs' concerns about their Confidential Information. The Court should hold it to that position. *See Waite*, 2012 WL 3600106, at *5-6 (adopting Attorneys' Eyes Only designation because proponent "offered more than simply conclusory assertions regarding" need for the designation; information was "especially sensitive"; and contract had "strict confidentiality provisions").

**CONCLUSION**

The Court should grant the motion and enter the attached Protective Order.

DATED: October 6, 2026

Respectfully submitted,

*/s/ Daniel W. Van Horn*
Daniel W. Van Horn (BPR 018940)
Kathryn K. Van Namen (BPR 031322)
Andrew B. Schrack (BPR 037624)
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Telephone: (901) 680-7200
Facsimile: (901) 680-7201
Danny.VanHorn@butlersnow.com
Kate.VanNamen@butlersnow.com
Andrew.Schrack@butlersnow.com

Joshua D. Branson (admitted *pro hac vice*)
Andrew C. Shen (admitted *pro hac vice*)
Matthew M. Duffy (admitted *pro hac vice*)
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999
jbranson@kellogghansen.com
ashen@kellogghansen.com
mduffy@kellogghansen.com

Kenton J. Skarin
Reid E. Coleman
SPACEXAI
800 W. Cesar Chavez Street
Austin, TX 78701
kskarin@x.ai
rcoleman@x.ai

*Counsel for Plaintiffs x.AI LLC, CTC Property LLC, and MZX Tech LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2026, the foregoing document was filed through the ECF system, which caused a copy of the document to be served on all registered participants identified on the Notice of Electronic Filing.

*/s/ Daniel W. Van Horn*
Daniel W. Van Horn

BUTLER SNOW LLP

*Counsel for Plaintiffs x.AI LLC,*
*CTC Property LLC, and MZX Tech LLC*